*In re* MARRIAGE OF MARY LOUISE DAVIS, Petitioner-Appellant, and JACK R. DAVIS, Respondent-Appellee.

First District (2nd Division)   No. 84—0879

Opinion filed March 12, 1985.

Paul Harrison Stacey, of Wheaton, for appellant.

Law Offices of Stephen L. Baum, Ltd., of Chicago (Stephen L. Baum and Marvin A. Brusman, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Petitioner, Mary Louise Davis (Mary), appeals the property division, maintenance and attorney fees portions of a judgment entered in the circuit court of Cook County dissolving her marriage to respondent, Jack R. Davis (Jack). She contends that the trial court erred in: (1) failing to "seek finality in the judgment"; (2) awarding to Jack the entire interest in his corporate law firm "without receiving evidence" as to its valuation; (3) failing to "evaluate or distribute" the law firm's pension plan; (4) awarding her only $1,000 per month for unallocated maintenance and child support for one year and; (5) requir-

ing Jack to pay only two-thirds of her approximately $16,000 attorney fees.

Mary and Jack were married in 1966. They had one child, Joel, born in 1968. Jack's two children from a previous marriage apparently lived with Jack and Mary until shortly before this litigation arose, at which time they left to live with their mother.

Mary testified: She is 38 years old and in good health. She is a high school graduate and worked for a short time at the outset of her marriage, but then stopped working in order to raise the family. At the time of trial, she had again worked as a secretary for a period of six months; working 25 hours per week, she was earning a gross income of approximately $13,000 per year. She did not consider herself a qualified secretary, and had enrolled in college secretarial courses. She cannot work full time while raising Joel. The yearly expenses for her and Joel amount to approximately $43,000.

Jack testified: He is a sole practitioner attorney with offices in Chicago and Palatine. He is 52 years old and in good health. His law firm was a sole proprietorship until 1980, when he incorporated it. His personal Federal income tax returns for the years 1976-1981 reflect an income from his law firm ranging from $60,000 to $75,000. His present salary is $1,000 per week. He conceded, however, that in 1981 he borrowed $50,000 from the firm which "could be considered" income to him. In the same year, he borrowed an additional $32,000 from the firm, which funds were "earmarked" for the firm's "defined plan pension program." The corporation's Federal corporate income tax return for the 1980-1981 fiscal year showed gross receipts of approximately $547,000, gross income of $180,000 and taxable income of $32,000.

Additional evidence admitted at trial relevant to valuation of the items of marital property included the following:

*Jack's Law Firm.* No expert testimony was presented. Jack testified that the corporation employed no attorneys other than himself and he employed one full-time and one part-time secretary. At the time of trial, the corporation's business was "down." The accounts receivable totaled $3,000. Jack had transferred to the corporation his one-third interest in the Palatine office building in which the law firm is located. The corporation also owns a 1977 Mercedes car which Jack valued at $15,000 and a 1981 Toyota truck, purchased for $9,000 cash. Mary introduced into evidence a financial statement prepared by Jack in 1979 for use in securing a bank loan in which he valued the law firm at $150,000.

*The Law Firm's Pension Plan.* No expert testimony was pre-

sented. Jack testified that the law firm had established a "defined benefit pension plan" which had no money in it, and that he had borrowed $32,000 from the corporation which was "earmarked" for the pension fund.

*The Marital Home.* The parties stipulated that it was worth $160,000 and carried a mortgage balance of $18,000. The furnishings in the home were worth approximately $7,000.

*The Wisconsin Condominium.* The parties stipulated that it was worth $118,000 and had a $50,000 mortgage.

*The Unimproved Rand Road Lot.* In 1977, the parties purchased a 50% interest in this property for $48,000. It had no mortgage.

*The Palatine Office Building.* In 1981, Jack and two equal partners purchased this building for $165,000. Jack assigned his one-third interest to his corporation. Jack's appraiser valued the property at $245,000; Mary's appraiser valued it at $265,000. It carried two mortgages which totaled $140,000 and according to Jack had "unpaid improvements" totaling $40,000.

*The Unimproved Wisconsin Lot.* Jack and Mary purchased an undivided one-fourth interest in it for $1,750.

*Lake Barrington Shores Condominium.* This was purchased in 1981 for $117,000.

*Other Personal Property.* The parties owned a sailboat purchased in 1980 for $60,000 cash and a 1978 Datsun car worth some $7,000.

At the conclusion of the hearings, the court took the case under advisement. At a subsequent hearing, the court announced its decision as to apportionment of the marital estate and child support and maintenance.

The court ordered the parties to sell the Lake Barrington Shores condominium and their interests in the unimproved Rand Road and Wisconsin properties, and to divide the net proceeds therefrom equally between them. Mary was awarded the marital home, its furnishings and the Datsun car. Jack was awarded his corporation, the Mercedes car and Toyota truck, the Wisconsin condominium, the corporation's interest in the Palatine office building and the sailboat. (While the court did not then note the corporation's pension program, at a subsequent hearing the court stated that it had "previously ruled that [Mary] shall have no interest in the pension fund.") In apportioning these items, the trial court neither assigned values to them nor made reference to the relevant statutory factors prescribed in the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)).

The court awarded custody of Joel to Mary, and ordered Jack to

pay to her $1,000 per month, for 12 months, as unallocated maintenance and child support. The court ordered a review of these payments after the 12-month period.[1] When announcing the support award, the trial court did not refer to the relevant statutory factors prescribed in the Act. Ill. Rev. Stat. 1981, ch. 40, pars. 504(b), 505(b).

At a subsequent hearing on Mary's petition for attorney fees, the trial court ordered Jack to pay two-thirds of her approximately $16,000 attorney's bill.

■ Mary's first contention is that the trial court "failed to seek finality" in its apportionment of the marital estate. Her language does not delineate the scope of her argument. An appellant has the responsibility to clearly define the issues raised, and to support them with pertinent citations to the record and authority. Mary has failed to do so, and we therefore find this issue to have been waived. *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833.

■ Mary next argues that the trial court erred when it distributed the marital property without possessing "evidence of the valuation" of Jack's professional corporation. Contending that "in all probability" the law firm was the largest asset in the marital estate, and that the trial court was presented "with little testimony as to the value of the corporation's assets, goodwill or the common stock from which the court could assemble or surmise a reasonably definitive evaluation," she requests that this court vacate the property apportionment and remand the case for further hearings on the issue of corporate value.

Jack responds that the court was presented with "competent evidence" of the value of the law firm, including the corporate tax return; Jack's personal tax returns; and Jack's "extensive" testimony regarding the corporation's economic status. He cites to cases standing for the proposition that a trial court is not required to place a value on each item of marital property, and that a trial court's apportionment of property will be upheld so long as the record contains competent evidence of value and the court's apportionment is supported by that evidence. See, *e.g., In re Marriage of Cuisance* (1983), 115 Ill. App. 3d 551, 450 N.E.2d 1302.

In our opinion, this case must be remanded for reconsideration of the value of Jack's corporation. Section 503(d) of the Act requires the trial court to apportion the marital property "in just proportions" in

---

[1]At oral argument, the parties advised that they had not yet returned to the trial court for review of the maintenance/child support payments.

light of the factors enumerated in the Act.

> "For a trial court to apportion marital assets under section 503 *** the proper value of such assets must be established. [Citation.] Where the record lacks proper evidence of valuation, there is no basis upon which an appellate court can review the propriety of a trial court's apportionment of marital property. [Citation.]" *In re Marriage of Wilson* (1982), 110 Ill. App. 3d 809, 813, 443 N.E.2d 31.

While we recognize that the valuation of a closely held corporation "is not an exact science" (*In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 89, 458 N.E.2d 1360), this does not mean that such entities are incapable of being appropriately evaluated. For example, in *In re Marriage of Weiss* (1984), 129 Ill. App. 3d 166, 172, 472 N.E.2d 128, the court states:

> "*In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 113 Cal. Rptr. 58, stated that in valuing a law practice, consideration must be given to the existence and value of: (1) fixed assets, including cash, furniture, equipment, supplies and law library; (2) other assets, including properly aged accounts receivable, costs advanced with due regard to collectibility, work in progress partially completed but not billed as receivable, and work completed but not billed; (3) goodwill of the practitioner in his business as a going concern; and (4) liabilities of the practitioner related to his business."

The only evidence introduced here was that of four corporate assets: two vehicles, the accounts receivable and Jack's interest in the office building which he had assigned to the firm. Mary introduced Jack's own four-year-old financial statement in which he valued the firm at $150,000. We consider this evidence as insufficient basis for the determination of the value of the law firm.

Further, the trial court's failure to assign a value to the law firm precludes this court from effectively reviewing the trial court's apportionment of marital property. Jack, in his brief, suggests that his corporation be valued at $3,000 (the amount of the accounts receivable), and thereupon calculates that each party received an approximately equal share of the marital estate. Mary, assigning to the firm a value of $150,000 (Jack's 1979 valuation), calculates that Jack received approximately 70% of the marital estate. Under these facts "it is essential for purposes of complete fairness that a definite valuation" be placed on the professional corporation. (*In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, 945, 429 N.E.2d 1334.) The trial court should permit the parties to introduce further evidence of the corpo-

ration's value, and whereupon the court should assign a value thereto. Thereafter the court must apply the relevant statutory factors contained in the Act, and apportion the marital estate.

In a related argument, Mary contends the trial court erred when it failed to evaluate, and to distribute, the law firm's pension plan. As noted, the only evidence relevant to this issue was Jack's own testimony that the corporation had established a "defined benefit pension plan" which had no funds but that he had borrowed from the corporation $32,000 which was "earmarked" for the pension plan.

The trial court did not assign a value to the plan and did not, in its oral pronouncement of judgment, refer to the plan. At a subsequent hearing the court stated that it had intended to award the pension plan to Jack.

Jack argues that, in light of the evidence, the trial court "could have" found the pension plan to be an asset of the corporation, which was awarded to him. Jack notes that in closing argument, Mary's trial attorney deemed the pension plan to be part of the corporation:

> "MR. RINELLA: We are not asking for *** the professional corporation, which would include the pension ***."

It is clear that pension rights "whether matured, vested or not vested, contributory or noncontributory, are property under section 503 of the Act [citations]." (*In re Marriage of Hobbs* (1982), 110 Ill. App. 3d 451, 455, 442 N.E.2d 629.) It has been recognized that when, as appears to be the case here, a party is both the "sole participant" as well as the "sole beneficiary" in a pension plan, that person has the capacity to make himself fully vested at will. (*In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925.) "[A]bsent sufficient evidence of the present value of future pension fund benefits, an award of an interest in such benefits is inappropriate under section 503." (*In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 314, 437 N.E.2d 777.) While the record here indicates the trial court intended to award the pension plan to Jack, the court's failure to evaluate the pension under these facts precludes appropriate review by this court of the overall property apportionment. Upon remand, the trial court should determine the value of the pension plan to assure an equitable apportionment of the marital estate.

Mary next argues that the trial court abused its discretion in awarding her unallocated maintenance and child support of $1,000 for 12 months. She finds this unreasonably low in light of her testimony that her monthly expenses amounted to $3,600. She also suggests that the evidence indicates that Jack's actual income was appreciably higher than his claimed income, pointing to his cash purchases of cars,

boats and other property, and his large "loans" from the corporation.

Jack responds that the maintenance and child support award is "most generous" since it amounts to approximately one-third of his net income. Jack alleges that Mary's argument suggests that she believes she is entitled to continue in the life-style to which she was accustomed during the marriage but that, as her trial attorney conceded, this is not possible given the present economic circumstances of the parties.

Because we are remanding this case, we need not reach the merits of this issue. The allocation of marital property is among the factors to be considered in setting maintenance (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1)) and child support (Ill. Rev. Stat. 1981, ch. 40, par. 505(a)(2)). It has been deemed appropriate therefore "to remand to the trial court all interrelated property and support issues once it has been determined that the property division was improper." (*In re Marriage of Wilson* (1982), 110 Ill. App. 3d 809, 815-16, 443 N.E.2d 31.) The trial court, upon apportioning the marital assets, should apply the relevant statutory factors in determining the issues of maintenance and child support.

Mary's final contention is that the trial court abused its discretion in requiring Jack to pay only two-thirds of her $16,000 attorney fees.

The award of attorney fees should take into account, *inter alia*, the apportionment of the marital estate. (*In re Marriage of Derning* (1983), 117 Ill. App. 3d 620, 453 N.E.2d 90.) Since the present case is to be remanded for reconsideration of the marital property apportionment, the trial court must also reconsider the issue of the apportionment of attorney fees.

In determining the apportionment of Mary's attorney fees, we suggest the trial court should examine the amount of such fees.

"Fees granted should provide for fair compensation for reasonable and necessary services determined by considering the financial position of the parties, the skill and standing of the attorneys employed, the importance, novelty and difficulty of the question raised, the degree of responsibility, the time and labor required, the usual and customary charge in the community, and the benefits resulting to the client. [Citation.]

\* \* \*

It is well established that a mere compilation of hours and hourly rates such as was provided in this case will not necessarily justify the award of attorney fees as requested. [Citations.]" (*In re Marriage of McNeely* (1983), 117 Ill. App. 3d 320, 329-30, 453 N.E.2d 748.)

Additionally, the fees awarded "should be limited to an amount which provides fair compensation to the attorney and which are fair to the person required to pay." *In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 62, 446 N.E.2d 1198.

From our review of the record in the instant case, we conclude that no novel or complex issues were involved here and that insufficient evidence was presented on the few disputed and salient issues involved. It also appears that the trial court awarded Mary's trial attorney fees at the higher courtroom rate ($200 per hour) for such mundane matters as requesting continuances and presenting agreed orders. It has been held that this type of work does not require the "greater skill" contemplated by billing court time at a higher rate. *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988.

For the foregoing reasons the judgment of the circuit court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

STAMOS, P.J., and HARTMAN, J., concur.