*In re* MARRIAGE OF PHYLLIS JANE BARNETT, Petitioner-Appellee, and SOL BARNETT, Respondent-Appellant.

Fourth District   No. 4—02—1073

Argued August 20, 2003.—Opinion filed December 5, 2003.—Rehearing denied January 29, 2004.

TURNER, J., specially concurring in part and dissenting in part.

Stephen R. Ryan (argued), of Ryan, Bennett, Radloff & O'Brien, of Mattoon, for appellant.

Rebecca E.P. Wade (argued), of Meyer Capel, P.C., of Champaign, for appellee.

JUSTICE COOK delivered the opinion of the court:
Respondent, Sol Barnett, appeals a judgment of dissolution of

marriage entered by the circuit court of Champaign County on September 5, 2002. Respondent argues the trial court erred (1) in barring him from presenting certain evidence as a sanction for refusing to afford discovery and (2) in finding that his transfer of a joint tenancy Fidelity account to petitioner, Phyllis Jane Barnett, constituted a gift, rendering the account petitioner's nonmarital property. We affirm.

Petitioner and respondent were married April 23, 1988. On February 29, 2000, petitioner filed a petition for dissolution of marriage. Shortly after the petition was filed, petitioner moved to California and respondent moved to North Dakota.

Petitioner filed a request to produce and matrimonial interrogatories on April 5, 2000. Respondent filed a motion for an extension of time, and on June 27, 2000, the trial court entered an agreed order requiring respondent to furnish discovery within 60 days. When that was not done, the court, on January 25, 2001, ordered discovery be furnished within 10 days, warning that failure to do so would result in a default finding being entered, and assessed attorney fees. Respondent delivered a response of sorts on February 5, 2001. Many of respondent's answers, however, included the phrases "records for 2000 and 2001 are to be provided," "details are unavailable to respondent at this writing," "respondent has not been able to access all documents needed to complete this answer," "respondent's efforts to complete a list, without access to records, continues," and "records are not available to me. Records are with accountant, Barb Lichti, petitioner, or in Champaign home." Lichti, however, stated that she informed respondent numerous times that she did not have the records he sought.

At a hearing on March 19, 2001, respondent's attorney advised the court that he had supplied petitioner with 15 pounds of discovery response and "I kind of foresee the court having to look through a thousand pages of documents to reconcile this." The trial court denied respondent's motion for an extension of time to supplement discovery. At a later pretrial conference, the trial court advised the parties it would make a final ruling on discovery and "I expect both of you to have everything that you want the court to see that day so I can make a call so that we can get on with this case." On October 2, 2001, the court made its final ruling on discovery. The court stated "I believe 'details are unavailable at this time' is in fact an improper answer. It's a euphemism for saying I am not going to get around to answering your question yet." Accordingly, the court imposed a sanction, barring respondent from presenting any further evidence relating to financial information, and awarding attorney fees.

■ Respondent argues the trial court erred in sanctioning him on

October 2, 2001, because by that time he was in compliance with petitioner's discovery requests. An appellate court will not overturn a trial court's sanction absent an abuse of discretion. See *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94, 108, 634 N.E.2d 448, 458 (1994). Respondent's "15 pounds of discovery" response was inadequate. *In re Blank*, 145 Ill. 2d 534, 549, 585 N.E.2d 105, 112 (1991) (practice of answering interrogatories with vague, general responses and attaching to them 23 pages of unverified, unidentified documents not specifically referred to or described in answer is not an acceptable substitute for answers required by court rule). Failure to comply is unreasonable if it is a "deliberate, contumacious, or unwarranted disregard of the court's authority." *Blott v. Hanson*, 283 Ill. App. 3d 656, 662, 670 N.E.2d 345, 349 (1996). A just sanction is one which, "to the degree possible, insures both discovery and a trial on the merits." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123, 692 N.E.2d 286, 291 (1998). The purpose of the sanction is to coerce compliance with discovery orders, not to punish the remiss party. *In re Marriage of Booher*, 313 Ill. App. 3d 356, 359, 728 N.E.2d 1230, 1232 (2000). When it becomes apparent that a party will not afford discovery, however, the trial court must devise some fair method to complete the case.

■ Applying these factors and principles to the present case, we find the trial court did not abuse its discretion by barring respondent from presenting additional evidence of financial matters. An enormous potential for prejudice lies if financial information is missing due to respondent's failure to comply with discovery. The court here was forced to make a number of rulings without sufficient financial information. For example, although the court awarded the value of respondent's medical practice to him, the court was unaware of the value of that asset. Petitioner claimed more than once that she did not know the extent of respondent's wealth and she believed he was hiding money and transferring money often. From the record it is clear respondent was a wealthy man with various assets and money placed in numerous accounts. The trial court considered the potential for prejudice to respondent and found the potential prejudice to petitioner due to respondent's concealment of information more compelling. The court imposed a sanction proportionate to the gravity of respondent's discovery violations.

Respondent was allowed to testify and present additional evidence regarding a disputed $1,551,616.48 Fidelity account No. X53094005. At one time, this account contained respondent's premarital funds and was a joint account between the parties. In 1995, however, respondent transferred the account solely to petitioner. Respondent testified he

transferred the account to petitioner to protect the account from two malpractice actions then pending against him. He anticipated the account would be returned to joint ownership upon his retirement in November 1999. Respondent admitted he understood when he transferred the account into petitioner's name that it was no longer a joint account and that he did not have any ownership interest in it. Petitioner testified respondent gave her the account as a gift because "he's substantially older than me; and he wanted me to feel secure" and "at that time he cared about me." Respondent argued, however, that petitioner did not claim the account as her nonmarital property in her response to his interrogatories and first did so in her supplemental pretrial memorandum.

The trial court found that respondent made a gift of the account to petitioner and that the account was petitioner's nonmarital property. In doing so, the court stated "on my assessment of the credibility of the witnesses, I believed more likely her version of the events and determined that amount, that fund to be nonmarital property, so I awarded it to her."

■ The Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) specifically provides that "non[ ]marital property transferred into some form of co-ownership between the spouses" is presumed to be marital property. 750 ILCS 5/503(b)(1) (West 2000). It has been held that the converse is also true: that it is possible for one spouse to make a gift to the other of marital property, which the recipient could claim then as nonmarital. *In re Marriage of Severns*, 93 Ill. App. 3d 122, 125, 416 N.E.2d 1235, 1237-38 (1981). Even where title is placed solely in one person's name, however, there is a presumption that the property is marital property, which presumption can be overcome only by clear, convincing, and unmistakable evidence. *In re Marriage of Davis*, 215 Ill. App. 3d 763, 771, 576 N.E.2d 44, 50 (1991).

■ Under the Dissolution Act, the preference is certainly for marital property. Nonmarital property will be found only where the requirements of the Dissolution Act are specifically met. There would seem to be a difference between the situation where marital property is placed in the name of the dominant spouse and the situation where marital property is placed in the name of the nondominant spouse. Compare *Severns*, 93 Ill. App. 3d at 124, 416 N.E.2d at 1237 (wife who executed a quitclaim deed to husband testified "she had been harassed by him on the matter, and that she executed the deed to please him and to save her marriage"), with *In re Marriage of Leff*, 148 Ill. App. 3d 792, 807, 499 N.E.2d 1042, 1052 (1986) (husband testified he transferred residence to wife only to protect the property from a malpractice action against him). The cases, however, have not made that distinction.

*Davis* reversed a finding that the husband intended a gift where he transferred a residence to his wife. The evidence in that case established that the conveyance was part of an estate-tax planning scheme. The husband continued to control the home by making payments for mortgages, taxes, insurance, and by making improvements. *Davis*, 215 Ill. App. 3d at 773, 576 N.E.2d at 50-51. The trial court in *Davis* erred as a matter of law by relying on a federal decision that gave controlling weight to the fact of conveyance. *Davis*, 215 Ill. App. 3d at 772, 576 N.E.2d at 50. In *Leff*, the court agreed with the trial court's finding of no donative intent when the husband transferred title to the residence to his wife's name. *Leff*, 148 Ill. App. 3d at 807-08, 499 N.E.2d at 1052-53. In *Leff*, the mortgage to the residence was in both names, and the husband continued to make all mortgage, tax, and insurance payments on the property. *Leff*, 148 Ill. App. 3d at 807, 499 N.E.2d at 1052.

■ In the present case, the trial court did not rely on the mere fact of transfer. The trial court found, by clear and convincing evidence, that respondent had a donative intent to vest title absolutely and irrevocably in the donee. The asset in the present case was not a residence over which the donor continued to exercise dominion. It was an account, which respondent did not deal with after it was transferred. The court made it clear that it did not believe respondent's testimony regarding the account. Even if respondent's testimony were accepted, that he transferred the account to protect it from creditors, it does not necessarily follow that respondent expected the account to be returned to him. Perhaps it was sufficient that petitioner and not the creditors have the account.

Respondent essentially argues that he was lying to his creditors when he transferred the account in 1995, that he did not really intend to give up his interest in the account. Was the respondent lying then or is he lying now? The decision was one for the trial court, and the court resolved it against respondent. A decision is contrary to the manifest weight of the evidence when an opposite conclusion is apparent or when the findings are unreasonable, arbitrary, or not based on the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242, 665 N.E.2d 1260, 1274 (1996). There was certainly some evidence in the present case to support the trial court's decision. It is the province of the trial judge to determine the credibility of the witnesses. *In re Marriage of Barnes*, 324 Ill. App. 3d 514, 520, 755 N.E.2d 522, 528 (2001).

The trial court did not abuse its discretion by barring respondent from presenting additional financial evidence at trial. The trial court's decision to classify the $1,551,616.48 Fidelity account No. X53094005

as petitioner's nonmarital property was not against the manifest weight of the evidence. We affirm.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE TURNER, specially concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority order finding the $1,551,616.48 Fidelity account No. X53094005 was petitioner's nonmarital property.

As the majority notes, to rebut the presumption the account at issue was marital property, petitioner bore the burden of proving by clear, convincing, and unmistakable evidence that she acquired the account as a gift from respondent. The fact the account was listed in petitioner's name only was insufficient to rebut the marital property presumption. Thus, petitioner had to prove respondent transferred the account to her with a donative intent to pass title and relinquish all present and future dominion over the account. See 344 Ill. App. 3d at 1154. I find petitioner's testimony was not clear, convincing, and unmistakable evidence and thus was insufficient to rebut the marital property presumption.

The facts of this case are similar to those in both *Davis*, 215 Ill. App. 3d at 771-73, 576 N.E.2d at 49-51, and *Leff*, 148 Ill. App. 3d at 806-08, 499 N.E.2d at 1052-53, where the courts found the property was marital property. See 344 Ill. App. 3d at 1155. Here, respondent testified he transferred the account into petitioner's name to protect the account from his pending malpractice lawsuits. See *Leff*, 148 Ill. App. 3d at 807-08, 499 N.E.2d at 1052-53 (finding a lack of donative intent where the respondent testified he transferred property to his spouse to protect it from a possible malpractice action). He anticipated the account would be returned to joint ownership when he retired. Contrary to the majority's finding, respondent continued to deal with the account after the transfer by depositing his paycheck into the account until the parties separated.

In this case, the trial court took judicial notice of two medical malpractice cases that were pending against respondent at the time of the transfer. That evidence supports respondent's testimony that the transfer was for asset protection purposes. Also, as in *Davis*, 215 Ill. App. 3d at 773, 576 N.E.2d at 50, respondent filed no gift tax return.

Moreover, petitioner did not assert the account at issue was her nonmarital property in both her response to respondent's inter-

rogatories and her initial prejudgment pretrial memorandum. It was not until her supplemental pretrial memorandum that she alleged the account was a gift.

Petitioner cites *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 463, 629 N.E.2d 1216, 1222 (1994), wherein the Fifth District distinguished the respondent donor's motive for transferring his property from his intent for making the transfer. The court found that "[m]otive is what prompts a person to act or fail to act, and intent refers only to the state of mind with which the act is done or omitted." *Weiler*, 258 Ill. App. 3d at 463, 629 N.E.2d at 1222. I am unconvinced and discern no reason to distinguish motive and donative intent as they are the same concept.

The majority intimates its disapproval of respondent's attempt to hide his assets from potential creditors. See 344 Ill. App. 3d at 1155. This is certainly understandable, but by recognizing the transfer here as a completed gift, the majority's ruling tends to give credence to the practice of hiding assets from creditors rather than discouraging it.

For the reasons stated, I would reverse the trial court's classification of the $1,551,616.48 Fidelity account No. X53094005.