(No. 13528.—Reversed and judgment here.)

OLGA A. CRAHE, Appellant, vs. THE MERCANTILE TRUST
AND SAVINGS BANK, Appellee.

*Opinion filed December 21, 1920.*

1. NEGOTIABLE INSTRUMENTS—*when all payees of an instrument must indorse it.* Under the Negotiable Instrument act, if an instrument is payable to the order of two or more payees who are not partners all must indorse unless the one indorsing has authority to indorse for the others.

2. SAME—*attorney has no implied authority to indorse client's name on check.* An attorney employed to prosecute a suit to judgment has no implied authority to indorse the client's name on a check payable to her order in satisfaction of the judgment.

3. SAME—*negligence of client in transactions with attorney does not estop her to deny his authority to indorse check.* Mere negligence of a client in her transactions with her attorney does not estop her, in a suit against a bank which paid a check drawn to the joint order of the client and attorney on a forged indorsement of her name by the attorney, to deny the attorney's authority to make such indorsement, and in the absence of such authority the bank is liable to her for her share of the proceeds of the check.

4. SAME—*liability of bank not released because forger had an interest in proceeds of check.* The liability of a bank to a payee for her share of the proceeds of a check drawn payable to the order of herself and her attorney and upon which her name was forged by the attorney is not affected by the fact that the attorney had an interest in the proceeds of the check, where he had no authority to indorse the client's name.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding.

JAMES J. BARBOUR, and EDWARD H. S. MARTIN, for appellant.

ADAMS, CHILDS, BOBB & WESCOTT, (DWIGHT S. BOBB, and F. M. HARTMAN, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

In 1915, appellant, Olga A. Crahe, obtained a judgment against the Chicago Surface Lines for $1000. Her attorney in this litigation was J. Marion Miller. He settled the judgment for $750 and costs and took in payment of the same a check for $761.85. The check named the client and her attorney as joint payees in the following language: "Pay to the order of Olga A. Crahe, judgment creditor, and order of J. Marion Miller, attorney for judgment creditor." Appellant signed a receipt dated June 5, 1915, showing receipt of $761.85 in full settlement of this judgment, and also signed an undated satisfaction piece. These documents were delivered to the Chicago Surface Lines by Miller June 7, 1915, when he obtained the check. June 9, 1915, Miller indorsed the check as follows:

"OLGA A. CRAHE, judgment creditor.
J. MARION MILLER, attorney for judgment creditor.
J. M. MILLER."

and presented the check to the Fort Dearborn National Bank of Chicago for payment. The check was paid and the proceeds deposited in said bank to Miller's credit. In due course appellee, the Mercantile Trust and Savings Bank, drawee of the check, paid it. Appellant, contending that the indorsement of her name was a forgery, brought an action of tort against appellee in the municipal court of Chicago for $461.85, the amount claimed to have been wrongfully appropriated by Miller. A trial was had without a jury and judgment was entered in favor of appellee. This judgment was affirmed by the Appellate Court for the First District, and on a certificate of importance granted by that court this further appeal is prosecuted.

The principal question presented for our consideration is whether an attorney employed to prosecute a suit to judgment has authority to indorse a check payable to the order of his client, received in satisfaction of the judg-

ment. The precise question here presented is a new question in this court and seems to be one that has had little attention in courts of other jurisdictions. Section 41 of our Negotiable Instrument law provides: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse unless the one indorsing has authority to indorse for the others." (Hurd's Stat. 1917, p. 2004.) In *Ryhiner* v. *Feickert*, 92 Ill. 305, we held that the possession of a negotiable instrument by one of two joint payees is not evidence that the payees are partners but is simply *prima facie* evidence of the title disclosed upon the face of the instrument, and that one joint payee cannot bind the other by his indorsement without the consent of his co-payee. In *First Nat. Bank of Chicago* v. *Pease*, 168 Ill. 40, we held that after a check had been delivered to the payee it was the property of the payee, and that a bank which paid the check on a forged indorsement would be liable to the payee for the funds so wrongfully paid out. It is immaterial whether Miller had an interest in the funds represented by the check in this case, because the right to commissions or fees from a fund does not constitute a joint ownership in the fund collected unless the terms of the contract which creates the agency expressly provide that the agent collecting the fund has the right to retain from the particular fund his commission or fees. (*People* v. *O'Farrell*, 247 Ill. 44.) Even if the contract of employment gave the agent authority to retain his commissions or fees, this authority would not amount to an authority to indorse negotiable paper. (*Jackson Paper Manf. Co.* v. *Commercial Nat. Bank*, 199 Ill. 151.) In the case last cited there is a full discussion of the subject of an agent's authority to indorse commercial paper and the opinion contains a comprehensive review of the authorities on the subject. It is there held that "the power of an agent to bind the principal by the making or indorsing of negotiable paper can only be charged against the principal by

necessary implication where the duties to be performed can not be discharged without the exercise of such a power or where the power is a manifestly necessary and customary incident of the character bestowed upon the agent, and where the power is practically indispensable to accomplish the object in view." The Supreme Court of New York in *Porges* v. *United States Mortgage and Trust Co.* 203 N. Y. 181, 96 N. E. 424, fully discusses the same subject and lays down the same rule. In *McClintock* v. *Helberg,* 168 Ill. 384, this court discusses at considerable length the implied authority of an attorney, and among other things says that an attorney has no "power to assign or sell a claim or judgment of his client without special authority." In *Brown* v. *People's Nat. Bank,* 170 Mich. 416, 136 N. W. 506, an attorney indorsed and cashed a draft payable to the order of his client, and in holding the bank liable for the funds so wrongfully paid out the Supreme Court of Michigan says: "So far as the record discloses, both parties to this suit were innocent of intentional wrong and honest in this matter and both had misplaced confidence in Campbell. Plaintiff had employed and trusted him as her attorney. He was then an attorney in fair standing and a customer of the bank. When he presented to his bank the draft, fair on its face, apparently indorsed by the payee and indorsed by himself, the bank naturally cashed it without question on the strength of his indorsement and their acquaintance with him. As her attorney he had no authority to indorse her name. * * * The power to indorse checks or bills must be expressly conferred, and his employment to collect her claim conferred no authority to indorse a check or draft received in payment of the claim but made payable to her. (*Chatham Nat. Bank* v. *Hochstadter,* 11 Daly, (N. Y.) 343.) The indorsement was an ingenious forgery and conferred upon the bank no right to collect the money it represented and no protection in cashing it for him. It was her draft and could only be legally

paid on her indorsement. The fact that Campbell was her attorney and had it in his possession made no difference." We think the reasoning of this decision is sound and we concur in the conclusion reached. Appellee relies on the decision in *National Bank of the Republic* v. *Old Town Bank of Baltimore*, 112 Fed. 726, but the facts in that case are essentially different from the facts in the case at bar.

It is contended further by appellee that appellant is estopped from recovering from it because she acted negligently in her transactions with Miller. According to the testimony of appellant, Miller represented to her that he could get only $300, and on his representations and advice she agreed to settle for that amount. He paid her $212 and represented to her that he would need the remainder of the $300 to pay costs and witness fees. She acknowledges that the signatures to the receipt and the satisfaction piece appear to be her signatures, but she denies having signed either of the instruments with any knowledge of their contents. Appellant was negligent in her transactions with her attorney, but that, alone, cannot estop her from recovering from appellee. There is nothing in the record to show that appellant was under any legal duty, on account of her relations with appellee, to exercise ordinary care for appellee's safety in dealing with this check, and where there is no legal duty to exercise care there is no negligence in law. (*Wizard Oil Co.* v. *United States Express Co.* 265 Ill. 156.) In *Shepard & Morse Lumber Co.* v. *Eldridge*, 171 Mass. 516, 51 N. E. 9, it is said: "The doctrine of contributory negligence as a defense to actions of tort is now of most frequent application, but we have been referred to no instance in which it has been held applicable to actions upon commercial paper, or even when the holder of such paper sues in tort for its conversion one who has innocently taken it upon a forged indorsement. Nothing could more completely unsettle commercial dealings than to extend that doctrine to suits brought by hold-

ers of negotiable paper against other parties thereto. * * * We are of opinion that the holder of an unindorsed check, payable to his own order, is under no legal obligation to the drawer to exercise care as to how the check shall be kept or to whom he shall commit its custody, or to see to it that the check shall not be put in circulation by the forgery of his indorsement, so long as he acts honestly, without collusion. * * * He is under no legal obligation either to the drawer of the check or to the public to see to it that the check is not put in circulation with a forged indorsement." (See, also, 5 R. C. L. 567.) To the same effect is the decision in *People* v. *Bank of North America,* 75 N. Y. 547, where it is said: "It certainly is not a general rule of law that a person can be deprived of his property by an unauthorized transfer thereof, simply because he has not exercised ordinary care to prevent such transfer. I may carelessly intrust a dishonest person with my personal property and thus put it in his power to sell it, and yet it has been held that in such case my carelessness will not deprive me of the right to reclaim my property, the person thus intrusted having neither the real nor apparent power to sell it. I may place my unindorsed bills in the hands of an agent and thus place it in his power to forge an indorsement, and yet the indorsement would not bind me. The principle that when one of two persons equally innocent must suffer a loss by the act of a third person he shall bear the loss who placed it in the power of such third person to perpetrate the act does not apply to such cases. Where it is said in the books that one is estopped by his negligence as to the acts of another who has assumed to act for him or to deal in his property, the negligence meant is that of permitting such other person to clothe himself or to be clothed with apparent authority to act, and then the person who has been induced to rely and act upon the appearances can invoke the estoppel." There was nothing in appellant's conduct to suggest that she authorized Miller to indorse

her checks and we see no reason for applying the doctrine of estoppel.

There is no controversy regarding the facts in this case, and since appellee did not demand a jury trial at the time it entered its appearance, nothing remains to be done, as we view the law in this case, except to enter judgment for appellant for $461.85, and interest at five per cent on the same from June 9, 1915.

The judgments of the Appellate Court and of the municipal court are reversed and judgment is entered here against the Mercantile Trust and Savings Bank, a corporation, appellee, for $588.86 in favor of Olga A. Crahe, appellant. Costs in all courts will be taxed against appellee.

*Reversed, with judgment here.*