CHICAGO DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, Plaintiff-Appellant, v. GLEASON AND FRITZSHALL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—97—0835

Opinion filed March 30, 1998.—Rehearing denied April 29, 1998.

Lord, Bissell & Brook, of Chicago (R.R. McMahan, Terrence P. Canade, and Jennifer A. O'Malley, of counsel), for appellant.

Law Offices of Curtis J. Burke, P.C., of Chicago (Curtis S. Burke, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

On November 1, 1993, plaintiff, the Chicago District Council of Carpenters Welfare Fund, filed a complaint alleging that defendants,

Gleason & Fritzshall, Rick A. Gleason, and Steven N. Fritzshall, had converted a check made payable to both plaintiff and defendants. Plaintiff also sought punitive damages in connection with defendants' alleged conversion of the check. On March 17, 1994, the trial court entered an order striking the prayer for punitive damages. On October 29, 1996, the court granted summary judgment for defendants on plaintiff's conversion action. Plaintiff appeals. We reverse both orders and remand for further proceedings.

The Chicago District Council of Carpenters Welfare Fund (Welfare Fund) is a self-funded employee welfare benefit plan created by the Chicago and Northeast Illinois District Council of Carpenters to provide health and medical care benefits to participating members. During the time period of this case, Joseph Klimas was a member of the Welfare Fund. In May 1990, Klimas was injured in an automobile accident, and he later submitted a claim to the Welfare Fund for payment of medical expenses incurred as a result of the accident. The Welfare Fund made the requested payments on Klimas' behalf.

On September 13, 1990, Klimas signed a reimbursement agreement stating that he would reimburse the Welfare Fund "for all benefits so paid in the event of recovery, from any third person legally responsible for said injuries, whether by suit, settlement, or otherwise, to the extent the net amount of such recovery is attributable to hospital, surgical, medical, dental and vision expenses for which [he] received benefits from [the Welfare Fund]."

Klimas retained the law offices of Gleason & Fritzshall to represent him in a personal injury action against Joseph Walski, the driver of the vehicle that struck him. Rick A. Gleason was the attorney responsible for the day-to-day handling of Klimas' personal injury claim. In December 1991, Gleason settled Klimas' claim for $50,000.

On December 9, 1991, Walski's insurance carrier issued a check for $50,000 payable to "Joseph Klimas and his Attorney Fritzshall & Gleason & Blue Cross Blue Shield Company and Carpenters Welfare Fund." Klimas endorsed the check. Defendant Steven Fritzshall, Gleason's law partner, wrote under Klimas' endorsement: "Blue Cross Blue Shield Company Carpenters Welfare fund by Perry Bronson their agent." (Perry Bronson was the Welfare Fund's benefits coordinator.) Beneath that endorsement, Gleason wrote: "Fritzshall & Gleason Payable to Gleason & Fritzshall account #22—6460—4 by Rick A. Gleason, partner."

Shortly thereafter, Gleason deposited the endorsed check in a client trust account at the La Salle National Bank of Chicago and transferred $16,701.66 to Gleason & Fritzshall's own account for payment of their fees and outstanding expenses. Gleason then sent Kli-

mas a check in the amount of $16,631.67 as payment for his share of the settlement. The remainder was left in the trust account.

On or about September 18, 1992, the Welfare Fund's plan administrator, Blue Cross and Blue Shield, wrote Gleason complaining that it had not received payment for its lien on Klimas' personal injury claim. In October 1992, Gleason tendered a check in the amount of $13,491.67, which Gleason explained represented the Welfare Fund's *pro-rata* share of the $50,000 settlement. The Welfare Fund refused to accept the $13,491.67 check as payment of the amount owed, contending instead that Gleason should pay it the entire $50,000 settlement, plus interest.

On November 1, 1993, the Welfare Fund filed this conversion action, claiming that, without its knowledge or consent, defendants forged Perry Bronson's signature on the settlement check and cashed the check based on the forged signature. The complaint prayed for compensatory damages in the full amount of the check, which the Welfare Fund claimed was less than the amount owed it under the reimbursement agreement, and punitive damages.

The trial court struck the prayer for punitive damages and granted defendants' motion for summary judgment on the conversion action. The Welfare Fund (hereinafter plaintiff) appeals.

First, we examine whether the trial court erred in granting defendants' motion for summary judgment. Then, we examine whether the trial court erred in striking plaintiff's prayer for punitive damages.

■ Summary judgment is appropriate when the pleadings, together with any depositions, admissions or affidavits on file, demonstrate no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1992); *City of Chicago Heights v. Crotty*, 287 Ill. App. 3d 883, 885 (1997). Plaintiff argues that the trial court erred in granting summary judgment because factual questions exist regarding whether defendants converted the check at issue. Defendants argue they were entitled to summary judgment as a matter of law because plaintiff cannot state a cause of action for conversion. See *In re Estate of Albergo*, 275 Ill. App 3d 439, 446 (1995) ("[i]f a plaintiff fails to establish an element of the cause of action, then summary judgment for the defendant is proper").

■ To state a cause of action for conversion, plaintiff must allege (1) defendants' unauthorized and wrongful assumption of control, dominion or ownership over plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) plaintiff's

demand for possession of the property. *Roderick Development Investment Co. v. Community Bank*, 282 Ill. App. 3d 1052, 1057 (1996).

■ Defendants argue that since the $50,000 check was made payable to them, as well as to plaintiff, they had as much right as plaintiff to possession of the check and to the funds the check represented. Therefore, defendants contend that plaintiff cannot establish they engaged in unauthorized and wrongful assumption of ownership or control over the check. We disagree.

In *Crahe v. Mercantile Trust & Savings Bank*, 295 Ill. 375 (1920), Olga Crahe obtained a judgment against the Chicago Surface Lines for $1,000. Her attorney, J. Marion Miller, settled the judgment for $750 and costs and took in payment of the same a check for $761.85. *Crahe*, 295 Ill. at 376. The check was made out as follows: "Pay to the order of Olga A. Crahe, judgment creditor, and order of J. Marion Miller, attorney for judgment creditor." *Crahe*, 295 Ill. at 376. Miller endorsed Olga's name, as well as his own, on the back of the check. *Crahe*, 295 Ill. at 376. Later, the Mercantile Trust and Savings Bank, the drawee of the check, paid it. *Crahe*, 295 Ill. at 376.

Crahe brought a conversion action against Mercantile Trust, alleging the endorsement of her name was a forgery. *Crahe*, 295 Ill. at 376. Following a bench trial, the court entered judgment for Mercantile Trust. Our supreme court reversed, holding that where an instrument is payable to the order of two or more persons, all must endorse unless the one endorsing has the authority to endorse for the others. *Crahe*, 295 Ill. at 377. The court held that the liability of Mercantile Trust to Crahe for her share of the proceeds of the check was not affected by the fact that her attorney also had an interest in the proceeds of the check, where he had no authority to endorse Crahe's name. *Crahe*, 295 Ill. at 377.

In *Hoffman v. First National Bank*, 299 Ill. App. 290 (1939), J.H. Kraemer & Son delivered to Abe Symons a $4,804.75 check made payable to Abe and his ex-wife, Rae Hoffman. Rae's signature was later forged on the back of the check, which was deposited in the predecessor bank to the First National Bank of Chicago. *Hoffman*, 299 Ill. App. at 291-92. Rae subsequently sued First National for conversion. The trial court dismissed Rae's complaint.

The appellate court reversed. Citing *Crahe*, the court held that First National was liable to Rae for her share of the proceeds of the check. *Hoffman*, 299 Ill. App. at 295-96. The court remanded the cause to the trial court, since "the question of fact as to [Rae's] interest in the check must be made an issue so that she may have an opportunity to prove what interest *** she had in the check which was payable jointly to her and her ex-husband, Abe Symons." *Hoffman*, 299 Ill. App. at 296.

Thus, *Crahe* and *Hoffman* hold that where a check is made out to plaintiff and defendant and defendant forges plaintiff's endorsement, plaintiff is entitled to a trial on the question of his interest in the check. In the present case, the parties dispute whether defendants had the authority to endorse Perry Bronson's name to the $50,000 check. Given this issue of material fact, as well as the holdings of *Crahe* and *Hoffman*, the court should have denied the motion for summary judgment and allowed the cause to proceed to trial.

Defendants argue, though, that since the $50,000 check was also made payable to defendants, plaintiff cannot establish it had the absolute and unconditional right to immediate possession of the check, as required to state a conversion cause of action. In support, defendants cite *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881 (1990). In *Douglass*, General Motors filed a complaint alleging that in May 1984, it issued a check payable to Douglass Chevrolet, among others, for $50,201.24. *Douglass*, 206 Ill. App. 3d at 882. Jack Douglass, in his capacity as president of Douglass Chevrolet, endorsed the check and deposited it at the First National Bank of Hinsdale. *Douglass*, 206 Ill. App. 3d at 883. General Motors subsequently learned that it had overpaid Douglass Chevrolet by $37,364.36. General Motors charged that, by endorsing and negotiating the check, Douglass converted $37,364.36 to his own use. *Douglass*, 206 Ill. App. 3d at 883. The trial court granted summary judgment for General Motors and against Douglass. *Douglass*, 206 Ill. App. 3d at 885.

The appellate court reversed, holding that since Douglass Chevrolet was the payee of the check, Jack Douglass, as president of Douglass Chevrolet, was entitled to possession of the check. *Douglass*, 206 Ill. App. 3d at 887. Thus, General Motors' immediate right of possession as against Douglass was lacking, and accordingly General Motors failed to establish that Douglass had committed an act of conversion by endorsing and negotiating the check. *Douglass*, 206 Ill. App. 3d at 887.

*Douglass* is inapposite to the present case, since it did not involve an action by the named payee of a check or an allegedly forged endorsement. *Crahe* and *Hoffman* are more closely on point, and as discussed above, their holdings require us to reverse the trial court's order granting summary judgment for defendants.

Defendants also argue that plaintiff has a right only to an indeterminate sum of money, and therefore its conversion action cannot be maintained. In support, defendants cite *Mid-America Fire & Marine Insurance Co. v. Middleton*, 127 Ill. App. 3d 887 (1984), and *Sutherland v. O'Malley*, 882 F.2d 1196 (7th Cir. 1989).

In *Middleton*, the plaintiff's insureds were killed in a car accident. Plaintiff paid $6,000 each under the respective liability insurance policies to the decedents' daughter as the administrator of her parents' estates. *Middleton*, 127 Ill. App. 3d at 889. At the time the administrator accepted the $12,000 in insurance proceeds, she signed a release agreeing to reimburse plaintiff out of the proceeds of any wrongful death recovery, less the reasonable costs incurred in effecting the recovery. *Middleton*, 127 Ill. App. 3d at 889.

The administrator brought a wrongful death action and retained defendants to represent her. The wrongful death action was settled for $30,000, with the settlement check made payable to the administrator and the defendants. *Middleton*, 127 Ill. App. 3d at 890. A dispute arose between plaintiff and defendants as to the share of the proceeds to which each was entitled. *Middleton*, 127 Ill. App. 3d at 890. Plaintiff subsequently brought a conversion action against defendants. Following a bench trial, the court ruled in favor of plaintiff. *Middleton*, 127 Ill. App. 3d at 890-91.

The appellate court reversed, holding that plaintiff must identify a specific fund or specific money in coin or bills as the property that was wrongfully taken and converted. *Middleton*, 127 Ill. App. 3d at 892. The court noted that pursuant to the release signed by the administrator, plaintiff had a right to reimbursement from any settlement growing out of the wrongful death actions. However, according to the release, that reimbursement was to be reduced by plaintiff's "proportionate share of all reasonable costs incurred in effecting said recovery." *Middleton*, 127 Ill. App. 3d at 892. Thus, the court determined that plaintiff had a right only to an indeterminate sum of money, and therefore it could not recover for conversion. *Middleton*, 127 Ill. App. 3d at 892.

In *Sutherland*, two attorneys, Sutherland and O'Malley, agreed to serve as co-counsel in the representation of one of Sutherland's clients. They arranged to split the attorney fees "on a fifty-fifty basis or [by some] other equitable arrangement based on the degree of effort [of each attorney]." *Sutherland*, 882 F.2d at 1198. A $127,000 settlement was obtained, resulting in attorney fees of $50,800. *Sutherland*, 882 F.2d at 1198. O'Malley caused the settlement payments to be sent to him and deposited the $50,800 in his firm's client fund account. *Sutherland*, 882 F.2d at 1198. O'Malley informed Sutherland about the settlement and told her that his handling of the case had been so time-consuming that "division of attorney's fees would have to be based upon fundamental fairness and equity." *Sutherland*, 882 F.2d at 1198. Sutherland brought an action for conversion. The trial court granted summary judgment for O'Malley and the appel-

late court affirmed. The appeals court held that because Sutherland had a claim only for an indeterminate amount of the attorney fees, she could not make a claim for a specific identifiable fund that was wrongly converted. *Sutherland*, 882 F.2d at 1201.

In the present case, the reimbursement agreement signed by Klimas entitles plaintiff to reimbursement from the $50,000 settlement check. However, according to the agreement, that reimbursement is only for the "net amount *** such recovery is attributable to hospital, surgical, medical, dental and vision expenses for which [Klimas] received benefits from [plaintiff]." The settlement did not identify which part of the $50,000 was for hospital, surgical, medical, dental, or vision expenses. Therefore, defendants argue that, as in *Middleton*, plaintiff has a right only to an indeterminate sum of money, and accordingly its conversion claim cannot stand.

Defendants also argue that, as in *Sutherland*, their contingency fee contract entitled them to some portion of the settlement check. Therefore, since plaintiff has a right only to an indeterminate amount of the check, it cannot make a claim for a specific identifiable fund capable of being the subject of a conversion.

We disagree. In *Roderick Development Investment Co. v. Community Bank*, 282 Ill. App. 3d 1052 (1996), plaintiff had a 5% interest in certain payments made to defendant. When defendant refused to recognize plaintiff's interest and kept his money for itself, plaintiff brought a conversion cause of action. Defendant claimed the conversion action could not lie because the sum allegedly converted was indeterminate since it was alleged only as a percentage. *Roderick*, 282 Ill. App. 3d at 1062. The appellate court disagreed, holding that money may be identified by its source or description. *Roderick*, 282 Ill. App. 3d at 1063. The court determined that the allegedly converted funds were adequately identified by description, 5% of the final payment under the purchase agreement, and their source, the payment transferred to defendant. *Roderick*, 282 Ill. App. 3d at 1063.

Similarly, in the present case, the allegedly converted funds were adequately described by their source, the $50,000 check made in settlement for Klimas' cause of action against Gleason, and by description, that amount attributable to hospital, surgical, medical, dental, and vision expenses for which Klimas received benefits from plaintiff. The issue of how much of the check is attributable to those expenses is a question of material fact that must be resolved by a jury. Accordingly, the trial court erred by granting summary judgment for defendants on plaintiff's conversion cause of action.

Defendants further argue that plaintiff's claim to the $50,000 settlement check is premised on the debt Mr. Klimas owes plaintiff

for the medical expenses it paid on his behalf. Defendants argue that a conversion action will not lie for money owing on such a general debt or obligation. In support, defendants cite *In re Thebus*, 108 Ill. 2d 255, 261 (1985). In *Thebus*, respondent withheld funds from his employees' wages to pay their federal income taxes and their contributions under the Federal Insurance Contributions Act (26 U.S.C. § 3101 *et seq.* (1976)), but he failed to remit the withheld funds to the Internal Revenue Service (IRS). *Thebus*, 108 Ill. 2d at 257. Our supreme court held that respondent had not converted his employees' funds. One of the reasons the court gave for its holding was that respondent was under an obligation to remit to the IRS the amount of money withheld as taxes, which obligation was in the nature of a debt and, thus, not a specific identifiable fund capable of being the subject of a conversion. *Thebus*, 108 Ill. 2d at 262. However, as noted above and in contrast to *Thebus*, plaintiff here has specifically identified the funds converted. See *Marc Development, Inc. v. Wolin*, 904 F. Supp. 777, 794 n.9 (N.D. Ill. 1995) ("where the money withheld to fulfill a debt is specific and identifiable, *** a conversion claim based on a debt is actionable"). Thus, *Thebus* is inapposite to the present case.

Defendants also argue that the trial court properly granted summary judgment in their favor because the $50,000 check did not at all times belong to plaintiff. See *Thebus*, 108 Ill. 2d at 261 ("It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use"). We disagree, as plaintiff pleaded that, pursuant to the reimbursement agreement signed by Klimas, it at all times had the sole right to the portion of the settlement check representing the hospital, surgical, medical, dental and vision expenses which plaintiff paid on Klimas' behalf. Plaintiff also pleaded that defendants converted the check by forging plaintiff's endorsement thereto. The question of what interest, if any, plaintiff actually had in the check, and whether defendants forged plaintiff's endorsement and converted the check, are factual questions inappropriate for resolution on a summary judgment motion.

■ Next, we address whether the trial court erred in striking plaintiff's claim for punitive damages pursuant to section 2—1115 of the Code of Civil Procedure. Section 2—1115 provides in pertinent part:

> "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal *** malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." 735 ILCS 5/2—1115 (West 1994).

Thus, section 2—1115's prohibition of punitive damages is applicable only if the behavior alleged in the complaint amounts to legal malpractice. *Cripe v. Leiter*, 291 Ill. App. 3d 155, 158 (1997).

Here, no attorney-client relationship existed between plaintiff and defendants, and therefore the behavior alleged in plaintiff's complaint did not amount to legal malpractice. See *Cripe*, 291 Ill. App. 3d at 158 (the existence of an attorney-client relationship is necessary to state a cause of action for legal malpractice). Accordingly, section 2—1115 did not bar plaintiff from seeking punitive damages, and the trial court erred when it granted defendants' motion to strike.

For the foregoing reasons, we reverse the trial court's orders granting summary judgment for defendants on plaintiff's conversion cause of action and striking plaintiff's prayer for punitive damages. We remand for further proceedings.

Reversed and remanded.

BUCKLEY, P.J., and GALLAGHER, J., concur.