# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Weisberger v. Weisberger*, 2011 IL App (1st) 101557

---

| | |
|---|---|
| Appellate Court Caption | LEAH WEISBERGER, Plaintiff-Appellee, v. SUZANNE WEISBERGER, Individually and as Trustee of the Amended and Restated Jacob Brotman M.D. Declaration of Trust, and Brotman Family Trust, Jacob Brotman, M.D., Grantor, Defendants (William Weisberger, Defendant-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1–10–1557 |
| Filed | June 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a conversion action alleging that plaintiff's father withdrew funds, without authorization, from the accounts of a living trust that plaintiff executed in which she was named as the sole trustee and sole beneficiary, the trial court properly entered summary judgment for plaintiff, since the right to the funds and the absolute and unconditional right to the immediate possession of those funds rested with plaintiff's living trust, in which plaintiff was the sole trustee, regardless of the fact that those funds may have come from her father, especially when funds deposited into an account are presumed to belong to the person in whose name the account is established; furthermore, there was no dispute that plaintiff's father withdrew the funds without authorization, that plaintiff demanded the return of the funds, and that her father refused. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08–CH–025989; the Hon. Richard J. Billik, Jr., Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | David A. Novoselsky and Brian A. Schroeder, both of Novoselsky Law Offices, of Chicago, for appellant. |
|---|---|
| | Mitchell S. Feinberg and Sanjay Shivpuri, both of Chuhak & Tecson, P.C., of Chicago, for appellee. |

| Panel | JUSTICE R. GORDON delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Cahill and McBride concurred in the judgment and opinion. |

## OPINION

¶ 1   Plaintiff Leah Weisberger, age 29, filed a four-count amended complaint against her mother and father, Suzanne and William Weisberger.

¶ 2   Counts I through III of the amended complaint concerned two trusts set up by Leah's grandfather, Jacob Brotman, which named Leah as the beneficiary and Suzanne as the trustee. Suzanne is not a party in this appeal and counts I through III are not at issue on appeal.

¶ 3   Count IV, which is at issue on appeal, alleges a conversion claim against her father, William, involving his alleged unauthorized withdrawal of funds from a living trust that she executed in which she was named as sole trustee and sole beneficiary.

¶ 4   As to count IV, the trial court granted Leah's motion for summary judgment pursuant to section 2–1005 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2–1005 (West 2008)), finding, *inter alia*, that there was no factual dispute that William was not a trustee or beneficiary of the living trust Leah executed, that William removed funds in the trust without Leah's authorization, and that Leah demanded return of the funds, but William refused. The trial court ordered William to deposit the funds that he withdrew from the trust bank account with the clerk of the court, and William refused to do so.

¶ 5   After William failed to deposit the funds with the clerk of the court, the trial court entered sanctions against William in the form of a monetary judgment in the amount of the funds withdrawn from the trust. William appealed.

¶ 6   On appeal, William claims that the trial court erred in granting summary judgment in favor of Leah on count IV. William argues that "the source and ownership of the funds" held

in Leah's living trust created a genuine issue of material fact that precluded summary judgment. We reject this claim, and we affirm the trial court's grant of summary judgment.

¶ 7                                     I. BACKGROUND

¶ 8                                     A. Complaint

¶ 9        On April 3, 2009, Leah filed a four-count "First Amended Verified Complaint for Specific Performance, Removal of Trustee, Accounting, and Conversion" (amended complaint), which alleges as follows: On July 6, 2001, Leah executed a living trust, titled "Leah Weisberger Living Trust" (Leah's living trust). Leah is the settlor of the trust and she named herself sole beneficiary and sole trustee with the power to "distribute property in cash or in kind."

¶ 10       Concerning successor trustees, the trust agreement stated:

> "When I cease to act as trustee, my mother SUZANNE WEISBERGER shall be trustee. Should my mother SUZANNE WEISBERGER cease to act as trustee, my father WILLIAM WEISBERGER shall be trustee."

¶ 11       In count IV of her amended complaint, Leah alleges a conversion claim against her father, William, individually, involving William's unauthorized withdrawal of all the funds held in her living trust. According to the amended complaint, Leah's living trust held its assets in Harris Bank money market account No. 850212466 and Harris Bank certificate of deposit No. 6900141872 (collectively, the Harris accounts).

¶ 12       The Harris accounts are each titled "Leah Weisberger Living Trust," with her social security number, and designate Leah and William as "trustees" on the accounts. William was a signatory on the Harris accounts and that is how he removed the funds. Leah alleges in her complaint that: "William was named as a joint owner of [Harris accounts] with Leah for convenience purposes."

¶ 13       Exhibits attached to the amended complaint included a notice of maturity for the certificate of deposit, a deposit statement, and a certificate of deposit renewal application. Those exhibits showed that on December 27, 2007, an unspecified amount of money from the Harris money market account was deposited into the Harris certificate of deposit, which had a maturity date of six months, or June 27, 2007. On that date, the Harris certificate of deposit matured and had a balance of $92,220.72. Also on that date, Leah withdrew $35,000 from the certificate of deposit and deposited it into the Harris money market account. Leah then renewed the Harris certificate of deposit with a remaining amount of $57,220.72.

¶ 14       The amended complaint alleges that prior to July 1, 2008, a family dispute arose after Suzanne and William, who are of the orthodox Jewish faith, discovered that Leah was dating a non-Jewish man. According to the amended complaint, Suzanne and William did not approve of the relationship and ceased to communicate with Leah.

¶ 15                                 B. William's Discovery Deposition

¶ 16       On May 27, 2009, William testified in a discovery deposition and claimed that the Harris

money market account that funded her trust was an account that he had opened and that it contained only his funds.[1] William further testified as follows:

> "The reason I also opened that [Harris money market] account, originally, because I wanted Leah to have credit, you know, credit cards when she was still single and living with us. *** I wanted her to have checking with it. Once she got married, I said to her, 'Forget it.' I left the money [in the Harris money market account], that was my money.
>
> ***
>
> Q. When was the [Harris money market] account first titled 'The Leah Weisberger Living Trust'?
>
> A. I believe we did it afterwards, when she got–I don't know, divorced or separated from her husband, whenever it was, you know, then we titled it that way, the living trust.
>
> Q. So, the money at the Harris Bank account was created after Leah was divorced?
>
> A. No. In that account there was money already to begin with, from the beginning.
>
> Q. What account?
>
> A. Which is the living trust account. There was money there from before. I never touched it."

¶ 17    At his deposition, William admitted that he removed all the money in the Harris accounts in July of 2008, totaling $99,858.76, without Leah's authorization, claiming that the money belonged to him. William then deposited the funds into another Harris bank account jointly owned by Suzanne and himself. When asked by Leah's counsel whether he was refusing to return the funds to Leah, the following colloquy took place:

> "Q. Are you refusing to return to Leah the money that she has requested and directed you to return to her?
>
> ***
>
> A. This is my money, not her money over there. So, all that money that was in that account is my money.
>
> Q. All the money in the Leah Weisberger Living Trust account is your money?
>
> A. In that 90, whatever thousand dollars that you're claiming, yes, that was my money.
>
> Q. What proof do you have of deposits?
>
> A. Of deposits?
>
> Q. Yes, into that [Harris money market] account?

---

[1]There is nothing in the record that indicates when the Harris money market account was opened or the amount of money initially placed in Leah's living trust.

A. All the rents she was suppose[d] to pay, which we agreed upon, $950 a month.

Q. Do you have a rental agreement with her?

A. No, I [did] not sign [a] lease with her, with my daughter, you know.

Q. Why not?

A. Because I have a verbal agreement with her.

¶ 18                                    C. Leah's Motion for Summary Judgment

¶ 19        On June 30, 2009, Leah filed a motion for summary judgment pursuant to section 2–1005 of the Code (735 ILCS 5/2–1005 (West 2008)) on all four counts of her amended complaint. As to count IV, Leah claimed that summary judgment was warranted because there was no genuine issue of material fact that: (1) William was not named a trustee or beneficiary in Leah's living trust; (2) William withdrew $99,858.76 from Leah's living trust without her authorization; (3) William deposited the funds from Leah's living trust into his jointly owned bank account with Suzanne; and (4) Leah demanded return of the funds, but William refused.

¶ 20        In her prayer for relief, she requested that the trial court either: (1) grant summary judgment in her favor on count IV "for specific performance for the return of all monies and assets taken by *** William from Leah's living trust plus interest"; or (2), in the alternative, grant summary judgment in her favor on count IV and "against *** William, finding [him] liable for civil conversion in the amount of $99,858.76 plus pre-judgment interest."

¶ 21        William filed a response to Leah's motion claiming that the Harris money market account was originally opened in his name, with his money, and therefore he transferred his own money from the Harris money market account to his joint bank account with Suzanne.

¶ 22        After a hearing held on September 23, 2009, the trial court granted summary judgment in favor of Leah on count IV and against William. The trial court issued a written ruling, finding that there was no factual dispute that: (a) the Harris accounts were titled "Leah Weisberger Living Trust"; (b) William is not named in Leah's living trust as a trustee or beneficiary; (c) William removed all of the funds from the Harris accounts without Leah's authorization; (d) William transferred the funds from the Harris accounts into his joint bank account with Suzanne; (e) the amount of the funds removed from the Harris accounts totaled $99,858.76; and (f) although Leah demanded the return of the funds, William refused.

¶ 23        The trial court considered William's claim that the money in the Harris accounts was "all the rents [Leah] was supposed to pay [him]," but instead, Leah deposited the money into the Harris money market account. The trial court found that "[t]o the extent William believes he has a claim for an outstanding debt, he can pursue such claims under applicable law, but he is not entitled to keep the funds from [Leah's living trust]." The trial court granted summary judgment and ordered as follows:

> "Plaintiff's motion for summary judgment on count IV is granted in part. William shall tender on or before October 7, 2009, the $99,858[.76] that he removed from the [Harris] account[s] to the Clerk of the Court until further order of this court. In the event that William does not place said funds with the Clerk of the Court or no longer has access to the funds to comply, then this court will entertain a request for

awarding the alternative relief that [Leah] requests to be entered against William."

¶ 24    D. Defendants' Motion to Reconsider Entry of Summary Judgment

¶ 25    On October 6, 2009, defendants filed a "motion to reconsider [the] summary judgment ruling" (motion to reconsider). As to count IV, William claimed that a genuine issue of material fact precluded summary judgment on count IV, because the funds in the Harris money market account were funds he deposited into that account and that he was named as a trustee for Leah's living trust.

¶ 26    On October 7, 2009, William did not tender $99,858.76 to the clerk of the court.

¶ 27    After a hearing on December 17, 2009, the trial court denied defendants' motion to reconsider as to count IV, finding that "[e]ven if William were authorized to remove the funds [from the Harris accounts] as [Leah's] authorized agent at the time, which appears to be one of his contentions, there is no admissible evidentiary inference or legal authority to support the contention in the motion to reconsider that would allow William to keep the funds in a jointly held account with Suzanne and deny [Leah], as William's principal, access to those funds for her benefit which she has demanded."

¶ 28    E. Leah's Petition for a Rule to Show Cause

¶ 29    On December 29, 2009, William still had not tendered $99,858.76 to the clerk of the court. Leah filed a petition for a rule to show cause against William for his failure to comply with the court's September 23 order to tender the funds.

¶ 30    On January 25, 2010, the trial court held a hearing on Leah's petition during which William's counsel requested that the trial court (1) enter a judgment in the amount of $99,858.76 in favor of Leah and against William and (2) include Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) language to make the order final and appealable. Also during the hearing, Leah's counsel informed the court that Leah was willing to reach an amicable resolution with William because she did not want to hold her father in contempt of court. William's counsel stated that he would speak with his client to determine if a resolution could be reached. The trial court then continued the hearing to January 29, 2010, allowing the parties to discuss a resolution.

¶ 31    On January 29, 2010, the parties informed the trial court that they were unable to reach a resolution. The trial court then entered a rule to show cause against William to show why he should not be held in contempt of court for his failure to tender $99,858.76 on or before October 7, 2009.

¶ 32    At a hearing on April 29, 2010, William failed to appear. In its ruling issued April 30, 2010, the trial court found that it had ordered William to tender the $99,858.76 to the clerk of the court, but William had failed to do so. The court also found that William did not claim that he lacks the necessary funds to tender to the clerk of the court and did not offer a reason for his failure to tender the funds as ordered. The trial court considered that the parties' attempts to either settle the matter or to reach an amicable resolution outside of court were to no avail. The trial court then determined as follows:

"[A]n appropriate sanction, that is both reasonable and responsive to the facts, circumstances and uncontradicted matters in the record, including the request submitted by William, is for a judgment to be entered for the amount that William is required to deposit with the Clerk of the Court pursuant to the [o]rder [of September 23, 2009]. The entry of the judgment is also supported by the findings and reasoning set forth in the [September 23] order and is consistent with the alternative relief that Leah seeks in [her] pleading against William."

¶ 33 The trial court entered a judgment in the amount of $99,858.76 in Leah's favor and against William and stated that its order was "a final order pursuant to Supreme Court Rule 304(a) and there was no just reason for delaying either enforcement or appeal or both."

¶ 34 This appeal followed.

## II. ANALYSIS

¶ 36 On appeal, William claims that the trial court erred in granting summary judgment in favor of Leah on count IV. William argues that "the source and ownership of the funds" held in Leah's living trust created a genuine issue of material fact that precluded summary judgment.

¶ 37 As an initial matter, Leah argues that William mischaracterizes the judgment from which he appeals. Leah argues that William is appealing from the April 30, 2010, contempt order that the trial court entered against William for his refusal to comply with its order to deposit the funds with the clerk of the court.

¶ 38 In his reply brief, William does not argue whether the trial court abused its discretion in imposing the sanction. Rather, he asks this court to "disregard [Leah's] entire discussion of the circuit court's issuance of a contempt finding against [him] and the circuit court's resultant imposition of the 'sanction' of a judgment against [him]." He argues that the trial court's underlying order granting summary judgment resulted in the contempt finding, and therefore, "the real issue in this appeal is the propriety of the circuit court's granting of [Leah's] motion for summary judgment." *People ex rel. Burris v. Maraviglia*, 264 Ill. App. 3d 392, 400 (1993) ("An appeal from a contempt order requires the reviewing court to examine the propriety of the underlying orders which ultimately resulted in the finding of contempt."). Accordingly, we review whether the trial court properly granted summary judgment in favor of Leah and against William on count IV.

## A. Jurisdiction

¶ 40 On April 30, 2010, the trial court entered a contempt order imposing a sanction against William in the amount of $99,858.76 and entered judgment on that amount. The trial court stated in its written order that its contempt order is "a final order pursuant to Supreme Court Rule 304(a) and there is no just reason for delaying either enforcement or appeal or both." Accordingly, this court has jurisdiction to hear this appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010).

¶ 41                                    B. Standard of Review

¶ 42      The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002); *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002). "Although a plaintiff is not required to prove his [or her] case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d at 335.

¶ 43      A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). The trial court must consider documents and exhibits filed in support or opposition to a motion for summary judgment in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004); see also *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995) (a court "must construe [documents and exhibits] strictly against the movant and liberally in favor of the nonmoving party"). Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review a trial court's decision on a motion for summary judgment *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102; *Hernandez v. Alexian Brothers Health System*, 384 Ill. App. 3d 510, 519 (2008).

¶ 44                                         C. Conversion

¶ 45      In the case at bar, the trial court granted summary judgment on count IV of Leah's complaint, in which she alleges conversion for William's alleged unauthorized withdrawal of funds from the Harris accounts held in Leah's living trust. To state a cause of action for conversion, a plaintiff must prove that: (1) she has a right to the property at issue; (2) she has an absolute and unconditional right to the immediate possession of that property; (3) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property; and (4) she made a demand for the return of the property. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998); *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 392 Ill. App. 3d 1059, 1063-64 (2009); *Chicago District Council of Carpenters Welfare Fund v. Gleason & Fritzshall*, 295 Ill. App. 3d 719, 722 (1998).[2]

¶ 46      In his appellate brief, William does not dispute that he withdrew the funds from the Harris accounts without Leah's authorization and deposited the funds into a bank account that he owned jointly with his wife Suzanne. He also does not dispute that Leah demanded the return of the funds and that he refused to do so. Rather, William argues that Leah failed to establish that she has: (1) a right to the funds in the Harris accounts; or (2) an absolute and

---

[2]Leah, as sole trustee, may bring suit for the return of the funds on behalf of the trust. See 760 ILCS 5/4.11 (West 2008); see also *Pierce v. Chester Johnson Electric Co.*, 117 Ill. App. 3d 867, 868-69 (1983) (a trustee may sue in her representative capacity on behalf of the trust).

unconditional right to the immediate possession of those funds. For support, William does not cite any legal authority. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument in appellate brief must be supported by citation to legal authority and factual record); *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 568 (2006). William points only to his discovery deposition testimony, during which he testified:

> "[The Harris money market account] use[d] to be an account that I had, okay, before Leah was married. And I had money in that account. When she got married, I told her to move another bank with her husband and to open up an account over there. And the money was left there, which was my account at that time–how do I say it, I left it there. *** I left the money, that was my money."

¶ 47　　We do not find William's claim persuasive. Funds deposited into a bank account are presumed to belong to the person in whose name the account is established. *Multi-Clean Products, Inc. v. Kasper*, 3 Ill. App. 3d 12, 15 (1971); see also 9 C.J.S. *Banks and Banking* § 293 (2008) ("[w]here a deposit is made by one person in the name of another, the rights with respect to such deposit belong to the person in whose name the deposit is made"). A certificate of deposit is also presumed to belong to the person whose name appears on the certificate. 10 Am. Jur. 2d *Banks and Financial Institutions* § 647 (2007); see, *e.g.*, *Multi-Clean Products*, 3 Ill. App. 3d at 15 (finding a certificate of deposit issued to wife was property of wife and not husband and wife, who jointly owned the safe deposit box where the certificate was stored).

¶ 48　　In this case, only Leah executed Leah's living trust, and the trust was funded from monies held in William's money market account at Harris Bank. After the living trust was executed by Leah, the money market account was established in the name of "Leah Weisberger Living Trust." There is no dispute that funds from the Harris money market account were later used to purchase a Harris certificate of deposit, also established in the name of "Leah Weisberger Living Trust." Thus, the rights with respect to the funds held in the Harris accounts are presumed to belong to Leah's living trust, with Leah as the sole trustee.

¶ 49　　In determining whether Leah had an absolute and unconditional right to the immediate possession of those funds, we find the Illinois Supreme Court's decision in *Katz v. Belmont National Bank of Chicago*, 112 Ill. 2d 64 (1986), instructive. In *Katz*, the owners of certain small businesses sued a bank for conversion to recover funds which the business owners gave to the bank's customer and depositor, a payroll service company. *Katz*, 112 Ill. 2d at 66. The payroll service company deposited the funds that it received from the business owners into its bank account, and then drew payroll checks from the bank account to pay the business owners' employees. *Katz*, 112 Ill. 2d at 66. When the employees' payroll checks were dishonored by the bank for insufficient funds, the payroll service company filed for bankruptcy and the business owners brought suit against the bank alleging conversion. *Katz*, 112 Ill. 2d at 66.

¶ 50　　Our supreme court held that the business owners failed to establish that they had a right to the funds or an absolute and unconditional right to the immediate possession of such funds to support their conversion claim. *Katz*, 112 Ill. 2d at 69. The supreme court found that there was no relationship between the business owners and the bank with respect to the funds in

the payroll service company's account, and that "[t]he only possible right to immediate possession of the [funds in a bank account], *absolute and unconditional*," rests with the entity whose name is on the account, *i.e.*, the payroll service company. (Emphasis in original.) *Katz*, 112 Ill. 2d at 69.

¶ 51    Here, Leah executed her living trust, and both of the Harris accounts used to fund the trust were established in the name of "Leah Weisberger Living Trust." Thus, similar to the payroll service company in *Katz*, the only possible right to immediate possession of the funds held in the Harris accounts, absolute and unconditional, rests with Leah's living trust.

¶ 52    In his reply brief, William argues that the evidence showed that: (1) he was listed as a "co-trustee" on the Harris money market account; (2) the Harris money market account was a "continuation of [a money market] account that contained [his] personal funds"; (3) Leah's living trust funds "thus were commingled with [his] personal funds"; and (4) [he] withdrew his personal funds from the Harris accounts. Thus, William concludes, a question of fact exists whether the funds in the Harris accounts were commingled with his personal funds and that Leah did not have a right to funds in the Harris accounts or an absolute and unconditional right of immediate possession of those funds. For support, William cites *Sadacca v. Monhart*, 128 Ill. App. 3d 250 (1984), which was also cited in Leah's appellate brief. In that case, this court found that "where [a] trustee commingles trust funds with his own and subsequently withdraws sums from the combined fund for his own use, the conclusive presumption is that the trustee withdrew his own funds first." *Sadacca*, 128 Ill. App. 3d at 258 (citing 4 John Pomeroy, Equity Jurisprudence § 1058d, at 151 (5th ed. 1941); *People v. Barrett*, 405 Ill. 188, 196 (1950)).

¶ 53    In *Sadacca*, the defendant sought to impose a constructive trust on a husband's personal checking account. *Sadacca*, 128 Ill. App. 3d at 254. The husband had obtained funds from the defendant through a fraudulent sale of a condominium unit. *Sadacca*, 128 Ill. App. 3d at 254. The husband then deposited the proceeds of the sale into his personal checking account together with funds he obtained from other sources. *Sadacca*, 128 Ill. App. 3d at 254. The husband's wife received some of the funds from her husband's personal checking account as maintenance and, after her husband's death, as a widow's award. *Sadacca*, 128 Ill. App. 3d at 252-53.

¶ 54    We find *Sadacca* distinguishable from the case at bar. First, the trust agreement here states that Leah is the sole trustee for her living trust, not Leah and William as "co-trustees" as William claims. William appears to be only a signator on the Harris money market account, where he is wrongfully listed as a "trustee." William is named only as an alternate successor trustee to Leah's mother, Suzanne, should Leah, and then Suzanne, cease to act as trustee.

¶ 55    Second, unlike the husband's bank account in *Sadacca*, the bank account at issue in the case at bar is not William's personal bank account. While William testified that he originally opened the Harris money market account and deposited money into that account, William transferred ownership of that account to Leah's living trust when Leah executed the trust agreement and established the name on the Harris money market account as "Leah Weisberger Living Trust." See, *e.g.*, *In re Marriage of Barnett*, 344 Ill. App. 3d 1150, 1153-

54 (2003) (transferring joint bank account solely to wife, husband made a gift of account to wife, and therefore, funds in account became wife's nonmarital property). Thus, the funds in the Harris money market account became the property of Leah's living trust and were not commingled with personal funds of William. Therefore, the only funds that William withdrew from the Harris accounts were funds belonging to Leah's living trust.

¶ 56        In sum, we agree with the trial court's determination that there was no genuine issue of material fact that precluded summary judgment on Leah's conversion claim. The right to the funds, and the absolute and unconditional right to immediate possession of those funds, held in the Harris accounts, rests with Leah's living trust, in which Leah is the sole trustee. In addition, there is no dispute that William withdrew the funds in the Harris accounts without Leah's authorization and that Leah demanded the return of the funds, and William refused. Accordingly, the trial court properly granted partial summary judgment in favor of Leah and against William on the conversion claim in count IV of Leah's amended complaint.

¶ 57                                        CONCLUSION

¶ 58        For the forgoing reasons, we affirm the judgment of the circuit court of Cook County in granting summary judgment in favor of plaintiff and against defendant for count IV of plaintiff's amended complaint.

¶ 59        Affirmed.